UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA FOUST and RONALD FOUST,

                    Plaintiffs,                    Civil Case No. 14-13571
                                                   Honorable Linda V. Parker

v.

HOME DEPOT USA, INC. d/b/a THE HOME
DEPOT,

                    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs filed this lawsuit in state court against Defendant Home Depot

USA, Inc., d/b/a The Home Depot ("Defendant"), after Plaintiff Theresa Foust

("Mrs. Foust") fell after tripping on a display cart at Defendant's store in Auburn

Hills, Michigan.  Defendant removed the action to federal court on the basis of

diversity jurisdiction on September 15, 2014.  In the Complaint, Mrs. Foust asserts

premises liability (Count I) and negligence (Count II) claims against Defendant.

Her husband, Ronald Foust, asserts a derivative loss of consortium claim against

Defendant (Count III).  Presently before the Court is Defendant's motion for

summary judgment, filed pursuant to Federal Rule of Civil Procedure 56.  The

motion has been fully briefed.  (ECF Nos. 20, 21.)  Finding the facts and legal

arguments sufficiently presented in the parties' pleadings, the Court is dispensing

with oral argument with respect to Defendant's motion pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is granting in part and denying in part Defendant's motion.

## I.     Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence

2

upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## II.    Factual Background

On June 3, 2014, at around 4:45 p.m., Mrs. Foust visited Defendant's Home Depot store in Auburn Hills, Michigan, where her daughter was working as a cashier. While waiting for her daughter to get off work at 5:00 p.m., Mrs. Foust traveled to an aisle of the store to look at blinds for her home. Mrs. Foust entered the aisle at the end closest to the front of the store, without any difficulty, and browsed the aisle. As she returned down the same aisle to the front of the store, her left shoe "caught" what she now assumes was the "bottom part" of a conversion cart situated just inside the aisle, which caused her to fall. Mrs. Foust fell to the ground onto her right hip, causing a comminuted fracture of the right femur requiring open reduction and internal fixation of the right hip.

3

The conversion cart, or "wing stack", is an "L" shaped metal cart with a 2'x 2' base and a 51" tall pegboard on which sales material is displayed. (ECF No. 19, Ex. 4 at Answers 3 and 4; Ex. 3.) The base and pegboard piece are dark grey in color. (*Id.*, Ex. 3.) At the time of the incident at issue, packaged products were displayed hanging from the pegboard and standing on the base. (*Id.*) The product on the base did not cover the entire base. (*Id.*) The aisle floor is a grey colored concrete, which the store's Manager, John Okar, described during his deposition in this matter as a lighter grey than the conversion cart. (ECF No. 20, Ex. F at 14.) Teri Ann Nickson-Nye, Mrs. Foust's daughter who works at the Home Depot, testified that the cart and color of the aisle floor are similar in color. (*Id.*, Ex. I at 33, 35-36.)

Home Depot employees had moved the conversion cart from the aisle's end cap to the first upright inside the aisle several days earlier to follow a special event floor plan distributed by the corporate office. (*Id.*, Ex. 4, Answer to No. 6.) According to Home Depot's practice, when moved into an aisleway, the conversion cart is placed at a forty-five degree (45°) angle to enable customers to get around the cart to reach product placed on the aisle shelves. (ECF No. 20, Ex. F at 36.) The aisles are approximately eight to ten feet wide. (*Id.* at 53; Ex. C at 76.) The distance between the closest base corner of the display unit to the permanent retail racking located on the opposite side of the aisle is approximately

4

five feet.  (ECF No. 19, Ex. 4, Answer to no. 17.)  Mrs. Foust agreed with defense

counsel during her deposition that there was "plenty of room" to walk through the

aisle without encountering the cart.  (*Id*., Ex. C at 79.)  There was no one else

attempting to enter or exit the aisle when Mrs. Foust's incident occurred.  (*Id*. at

76.)

       There is no evidence that the conversion cart had been moved by an

employee or customer before Mrs. Foust's fall.  (ECF No. 19, Ex. 4 Answer to No.

9.)  Nevertheless, at her deposition in this matter, Mrs. Foust did not recall seeing

or looking to see if there were any free standing displays and she did not see the

display before she fell.  (ECF No. 20, Ex. C at 69, 71.)  She also had no memory of

looking toward the floor to observe any obstructions in her path before she fell.

(*Id*. at 69.)  Instead, Mrs. Foust recalled looking to her right at whatever was

displayed in the aisle and to the front of the store where her daughter was situated

at her cashier station immediately before she tripped and fell.  (*Id*. at 68.)  Looking

at pictures of the area where the accident occurred during her deposition, which the

store's Operations Manager, Jonathan Wood, took immediately after the accident,

Mrs. Foust agreed with Defendant's counsel that the conversion cart was highly

visible.  (*Id*. at 93.)  During her deposition, Mrs. Faust's daughter also agreed with

Defendant's counsel that the conversion cart is highly visible if someone is paying

attention.  (*Id*., Ex. I at 46.)  When reminded by Plaintiffs' counsel that Mrs. Foust

5

would have been approaching the cart from its backside when she fell, Ms. Nickson-Nye agreed with Plaintiffs' counsel that the corner of the cart's base in fact was not highly visible. (*Id*. at 50-51, 53-54.)

Nevertheless, Mr. Wood, the store's Operations Manager, testified during his deposition in this case that in the twenty years he has worked at Home Depot, Mrs. Foust's accident was the first time he has had to respond to a customer tripping over a conversion cart. (ECF No. 20, Ex. H at 23.) Mr. Okar, the store's Manager, testified during his deposition that he was unaware of any trip and fall incidents over conversion carts occurring during his fifteen years at Home Depot. (*Id*., Ex. F at 41.) When asked if he considered the cart to be a trip hazard, Mr. Okar responded that he did not "because . . . I see this as something that is easy to be seen, is large enough in size that is noticeable and is, you know, positioned as such so that the customer is able to see that it's there . . .." (*Id*. at 42.) Ms. Nickson-Nye testified that she had never noticed anyone coming in contact with conversion carts in the store before her mother's accident. (*Id*., Ex. I at 27.) However, since the accident, she has seen people trip on the conversion carts, although not falling as a result. (*Id*. at 28-29.)

## III.   Defendant's Arguments and Plaintiffs' Response

In its motion for summary judgment, Defendant argues that it is not liable for Mrs. Foust's accident because the conversion cart was an open and obvious

6

danger.  Defendant contends that there are no special aspects of the conversion cart to remove this case from the open and obvious doctrine.  Defendant maintains that Mrs. Foust's claim sounds in premises liability rather than ordinary negligence as there is no evidence that Mrs. Foust's injury was the result of Home Depot employees omitting their responsibilities, as opposed to a condition of the premises.

Plaintiffs contend in response that there is a genuine issue of material fact with respect to whether the conversion cart was an open and obvious danger. Thus, Plaintiffs argue, the question is for the jury to decide.  Plaintiffs also argue that Defendant has a separate duty as a shopkeeper to keep its aisles safe for customers to which the open and obvious doctrine is inapplicable.

## IV.   Applicable Law and Analysis[1]

Under Michigan law, a plaintiff asserting a negligence claim must prove: "(1) 'that the defendant owed a legal duty to the plaintiff,' (2) 'that the defendant breached or violated the legal duty,' (3) 'that the plaintiff suffered damages,' and (4) 'that the breach was a proximate cause of the damages suffered.' " *Demo v. Red Roof Inns, Inc.*, 274 F. App'x 477, 478 (6th Cir. 2008) (quoting *Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 177 (Mich. 1993)).  "The duty that a

---

[1] The parties are in agreement that Michigan substantive law applies to this case which is before the Court on diversity jurisdiction.  *See Cudney v. Sears, Roebuck & Co.*, 21 F. App'x 424, 427-28 (6th Cir. 2001) (citations omitted).

possessor of land owes to another person who is on the land depends on the latter person's status." *Hampton v. Waste Mgmt. of Mich., Inc.*, 601 N.W.2d 172, 175 (1999). The parties are in agreement that Mrs. Foust was an invitee on Defendant's premises when the accident occurred. (*See* ECF Nos. 19 at Pg ID 103, 20 at Pg ID 256.)

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). This duty arises where there is "an unreasonable risk of harm caused by a dangerous condition of the land that the landowner knows or should know the invitees will not discover, realize, or protect themselves against." *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (internal quotation marks and citation omitted). This duty does not extend, however, to dangerous conditions that are open and obvious unless special aspects of the condition make even an open and obvious risk unreasonably dangerous. *Lugo*, 629 N.W.2d at 386. As summarized by the Michigan Supreme Court:

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger. On the other hand, if the risk of harm remains unreasonable, despite its obviousness or despite knowledge of it by the invitee, then the circumstances may be such that the invitor is required to undertake reasonable precautions.

8

*Bertrand*, 537 N.W.2d at 187.

An open and obvious condition is one " 'that an average person with ordinary intelligence would have discovered . . . upon casual inspection.' " *Wimberly v. Forman Mills, Inc.*, 574 F. App'x 621, 622 (6th Cir. 2014) (quoting *Hoffner v. Lanctoe*, 821 N.W.2d 88, 94-95 (Mich. 2012). The Michigan Supreme Court has advised that when applying this test, "it is important for courts . . . to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff." *Lugo*, 629 N.W.2d at 390. "The proper question is not whether *this plaintiff* could or should have discovered the [dangerous condition], but whether the [dangerous condition] was observable to the average, casual observer." *Price v. Kroger Co. of Michigan*, 773 N.W.2d 739, 742 (Mich. Ct. App. 2009) (emphasis in original) (citing *Novotny v. Burger King Corp.*, 499 N.W.2d 379, 381 (Mich. Ct. App. 1993); *see also Lugo*, 629 N.W.2d at 390 (explaining that the degree to which the plaintiff was paying proper attention is immaterial to the question of whether the condition of the premises was open and obvious). While the danger of a condition may generally be open and obvious, there may be special aspects of the condition "that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe."

*Bertrand*, 537 N.W.2d at 188.  As the Michigan Supreme Court subsequently

restated:

> Consistent with *Bertrand*, we conclude that, with regard to open and
> obvious dangers, the critical question is whether there is evidence that
> creates a genuine issue of material fact regarding whether there are
> truly "special aspects" of the open and obvious condition that
> differentiate the risk from typical open and obvious risks so as to
> create an unreasonable risk of harm, i.e., whether the "special aspect"
> of the condition should prevail in imposing liability upon the
> defendant or the openness and obviousness of the condition should
> prevail in barring recovery.

*Lugo*, 629 N.W.2d at 387.

The *Bertrand* Court provided some examples of when the obviousness of the

danger may not relieve the premises owner of liability.  For one, the Court

explained that while the danger of tripping and falling on a step is generally open

and obvious, there may be unique circumstances, such as the "character, location,

or surrounding conditions," that render the area unreasonably dangerous.

*Bertrand*, 537 N.W.2d at 189-90.  Thus in *Bertrand*, the Court found the step at the

defendant's place of business unreasonably dangerous because of its placement in

relation to vending machines and a cashier's window, as well as the fact that the

hinging of a door required the plaintiff– who was holding the door open for other

customers coming from the opposite side of the door– to step back near the edge of

the step.  *Id*. at 192.  The Court also indicated that "[s]uch reason to expect harm to

the visitor from known or obvious dangers may arise . . . where the possessor [of

10

the land] has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." *Id*. at 187. In such a case, the *Bertrand* Court advised, the open and obvious nature of the dangerous condition does not relieve the premises owner of a duty of reasonable care and he or she may be required "to warn the invitee, or to take other reasonable steps to protect him . . .." *Id*. (quoting Restatement Torts, 2d § 343A, comment f at 220). The Court subsequently stated in *Lugo* that "only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious doctrine."[2] 629 N.W.2d at 387-88.

Relying on several Michigan Supreme Court and Court of Appeals cases, Plaintiffs argue that Defendant, as a shopkeeper, owed a separate and independent duty to keep its aisles reasonably safe for shoppers which is not subject to the open and obvious doctrine. The Michigan Supreme Court described this "storekeeper duty" in *Clark v. Kmart Corporation*, 634 N.W.2d 347 (2001), as follows:

> "It is the duty of a storekeeper to provide reasonably safe aisles for
> customers and he is liable for injury resulting from an unsafe
> condition either caused by the active negligence of himself and his
> employees or, if otherwise caused, where known to the storekeeper or

---

[2] The examples of such a situation that the *Lugo* Court provided were "a commercial building with only one exit for the general public where the floor is covered with standing water" or "an unguarded thirty foot deep pit in the middle of a parking lot." 629 N.W.2d at 387.

> is of such a character or has existed a sufficient length of time that he
> should have had knowledge of it."

*Id*. at 348-49 (quoting *Serinto v. Borman Food Stores*, 158 N.W.2d 485, 486

(Mich. 1968) (additional citations omitted).  The open and obvious doctrine was

not at issue in *Clark*; instead, the question before the Michigan Supreme Court was

whether there was sufficient evidence to conclude that the defendant knew or

should have known of the dangerous condition (i.e., grapes scattered on the store's

floor).  On remand, however, the appellate court in *Clark* discussed the

obviousness of the dangerous condition when addressing the additional issue of

whether the trial court erred in refusing to give a jury instruction on comparative

negligence. 640 N.W.2d 892, 897 (Mich. Ct. App. 2002).

The Michigan Court of Appeals in *Clark* relied on the Michigan Supreme

Court's decision in *Jaworski v. Great Scott Supermarkets, Inc.*, 272 N.W.2d 518

(1978), to uphold the trial court's decision to not instruct the jury on the issue of

contributory negligence.  Specifically, the appellate court in *Clark* relied on the

*Jaworksi* Court's statement that "an individual shopping in a self-service store

. . . is not under an obligation to see every defect or danger in his pathway." *Clark*,

640 N.W.2d at 898 (citing *Jaworksi*, 272 N.W.2d at 520); *see also Jaworksi*, 272

N.W.2d at 520 ("We cannot accept the notion that a customer in a modern

supermarket or department store should be under an obligation to see every defect

or danger in his pathway.").  The *Jaworski* Court had further stated:

12

> "Defendant's store in this case was a 'self-service' type store, in which its merchandise was displayed on counters or on shelves so that customers could inspect the merchandise as they walked in the aisles or passageways of the store. The storekeeper certainly intended that his customers would devote the major part of their attention to the merchandise which was being displayed, rather than to the floor to discover possible obstructions in the aisle, and in our opinion that circumstance must be considered in determining the degree of care which the storekeeper should use in maintaining safe passageways. A patron of a self-service type store, we think, is entitled to rely upon the presumption that the proprietor will see that the passageways provided for his use are reasonably safe, considering the fact that while using these passageways he may be devoting some of his attention toward inspecting the merchandise."

*Jaworski*, 272 N.W.2d at 521 (quoting *Provost v. Great Atl. & Pac. Tea Co.*, 154 So.2d 597, 601-02 (La App. 1963)).  Significantly, none of these statements by the Supreme Court in *Jaworksi* and the Michigan Court of Appeals in *Clark* were made in reference to the open and obvious doctrine or the duty of the premises owner.  Instead, they were specifically constrained to the issue of contributory negligence– a doctrine the Michigan Supreme Court abrogated a year after *Jaworksi*.  *See Placek v. City of Sterling Heights*, 275 N.W.2d 511, 522 (Mich. 1979) ("[C]omparative negligence shall be the applicable rule in any case commenced but not submitted to the trier of fact prior to the date of this decision[.]").

It is for this reason that courts have rejected a plaintiff's reliance on *Jaworksi* to argue that the open and obvious doctrine is inapplicable to a shopkeeper's duty, explaining that the "distraction" theory announced in *Jaworksi*

13

applies only to decide whether contributory negligence relieves the defendant of a duty already found to exist. *See, e.g., Kennedy v. Great Atl. & Pac. Tea Co.*, 737 N.W.2d 179, 183 (Mich. Ct. App. 2007) (rejecting the plaintiff's assertion that the distraction theory rendered the defendant liable for even open and obvious distractions, explaining that "[t]he problem with plaintiff's assertion in this regard is that *Jaworski* was a contributory negligence case . . . The issue . . . was not whether the defendant supermarket owed the plaintiff a duty, but whether the plaintiff was contributorily negligent in failing to observe and avoid slipping on [the dangerous condition]."); *Wimberly v. Forman Mills, Inc.*, 574 F. App'x 621, 622 (6th Cir. 2014) (unpublished) ("*Jaworksi* was a case about contributory negligence . . . thus [it] has no bearing on whether a defendant owes a plaintiff a duty in the first place, and thus is not relevant to the open and obvious doctrine."); *Bradfield v. Meijer, Inc.*, No. 258458, 2006 WL 708145, at *2 (Mich. Ct. App. Mar. 21, 2006) (unpublished) ("Plaintiff's reliance on the 'distraction' theory announced in *Jaworski* . . . a contributory negligence case, is misplaced.")  In support of their argument that the open and obvious doctrine is not applicable to a "separate and distinct" shopkeeper's duty to keep aisles safe, Plaintiffs also cite *Quinto v. Woodward Detroit CVS, LLC*, 850 N.W.2d 642 (Mich. Ct. App. 2014), and *Berryman v. K Mart Corporation*, 483 N.W.2d 642 (Mich. Ct. App. 1992). The court in *Berryman* did not address the issue of whether the open and obvious

14

doctrine was applicable to the plaintiff's negligence claim and never referred to

*Jaworski*'s distraction theory.  483 N.W.2d at 645-46.  This is because the only

question concerning the defendant's negligence presented in that case (aside from

two relevant evidentiary issues) was whether the plaintiff presented sufficient

evidence to create a jury question on whether defendant created the unsafe

condition (a wet floor).  *Id.*  The *Quinto* court did "conclude . . . that the

merchandise-display aisleways of a self-service retail store present particular

circumstances to the extent that the open and obvious danger doctrine does not

eliminate the duty of the store to take reasonable actions to make those aisleways

reasonably safe for its customer-invitees."  850 N.W.2d at 643.  The court's

conclusion is pure dicta, however, as the court also held that it was bound by the

court's earlier and contrary decision in *Kennedy*.  *Id.* at 647.

　　In short, because *Jaworski*'s "distraction" theory was discussed in the

context of contributory negligence rather than the shopkeeper's duty, the Michigan

Supreme Court cannot be said to have held that the open and obvious doctrine has

no applicability to a shopkeeper's duty to provide reasonably safe display aisle

ways.  In diversity cases, federal courts must apply the law of the state's highest

court.  *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985) (citing *Erie

R.R. v. Tomkins*, 304 U.S. 64 (1938)).  "If the highest court has not spoken, the

federal court must ascertain from all available data what the state law is and apply

15

it." *Id.* (citations omitted). The "data" guiding the court's inquiry includes intermediate appellate court decisions, the dicta of the state's highest court, restatements of law, law review commentaries, and the majority rule among other states. *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995). However, " 'a federal court may not disregard a decision of the state appellate court on point, unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.' " *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (quoting *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989)). Thus, as the court ultimately concluded in *Quinto*, this Court is bound by the Michigan Court of Appeals' decision in *Kennedy* that the open and obvious doctrine is applicable to the shopkeeper's duty. In two unpublished decisions, the Sixth Circuit Court of Appeals has reached the same conclusion. *See Wimberly, supra*; *Cudney v. Sears, Roebuck and Co.*, 21 F. App'x 424 (6th Cir. 2001) (rejecting the plaintiff's argument "that the open and obvious danger rule does not apply where a retail merchant creates display racks in a self-service store that extend into aisles to create a tripping hazard" and holding that "*Jaworski* does not create a heightened duty simply because [the plaintiff] was a customer in a store.").

In addition to establishing that the open and obvious doctrine is applicable to a shopkeeper's duty, the cases discussed above also establish that Mrs. Foust has

16

but one negligence claim properly asserted and analyzed only as a premises liability claim.[3]  *See, e.g., Wimberly*, 574 F. App'x 621 (analyzing the plaintiff's claim arising from trip and fall over hanger on ground in aisle of defendant's store as a premises liability action); *Cudney*, 21 F. App'x at 426 (same where the plaintiff tripped and fell over support leg of a clothing rack and finding no separate duty imposed on the defendant store); *Kennedy*, 737 N.W.2d at 711012 (same where the plaintiff slipped on crushed grapes and grape residue on the grocery floor); *see also Ealey v. Rockford Const. Co.*, No. 1:13-cv-802, 2015 WL 1459228, at * (W.D. Mich. Mar. 30, 2015) (unpublished) (recasting the plaintiff's negligence claim as a premises liability action as she was claiming injuries arising from a condition of the premises, i.e., the placement of a fire extinguisher on a column in a Meijer store).  As the *Cudney* court stated, there is no heightened duty for a premises owner "simply because [the plaintiff] was a customer in a store."  21 F. App'x at 429 (citing *Charleston v. Meijer, Inc.*, 335 N.W.2d 55 (Mich. Ct. App. 1983) (stating that "[w]e see no valid reason to extend *Jaworski* and create a special standard of care for supermarket patrons").  In short, Mrs. Foust is claiming

---

[3] In the Complaint, the second count is cast as an independent negligence claim based on the decision of Defendant's employees to place the conversion cart in the aisle in the manner that it was situated.  (Compl. ¶¶ 15-17.)  However cast, the allegations still assert injuries arising from a condition of the premises.  Plaintiffs do not allege active negligence on the part of Defendant independent of its duty as a business owner.

injuries arising from a condition of the premises.  The "shopkeeper's duty" defined in *Clark* and other cases is simply another way to phrase the duty to maintain the premises when the premises owner happens to be a shopkeeper.  It is not a separate and distinct claim, as Plaintiffs argue, which can be asserted as a separate negligence claim.  As such, Defendant is entitled to summary judgment with respect to the second count of Plaintiffs' Complaint.

Having resolved these issues, the Court turns to the question of whether the conversion cart was open and obvious such that Defendant is relieved of any duty to protect Mrs. Foust, or whether some special aspects of the condition nevertheless justify imposing liability on Defendant.  The Court finds that a jury could reasonably conclude that special aspects of the conversion cart would prevent an average person of ordinary intelligence from discovering its danger.

Defendant establishes that the conversion cart was "highly" visible. However, there is some dispute as to whether the corner of its base (on which Mrs. Foust apparently tripped) was clearly visible.  Moreover, as the pictures of the conversion cart taken by Defendant's employee after the accident show, there are metal strips which extend beyond the rear end of its base and lay close to the floor, creating an independent tripping hazard.

While careful shoppers may not be able to miss seeing the approximately four-foot tall conversion cart and would adjust their route to avoid colliding with

18

the cart, even prudent shoppers may not observe the extending pieces requiring them to veer even further from the cart in order to pass by it safely. That these pieces, like the conversion cart, are similar in color to the store's cement floor and are at floor level render them even harder to observe.

Further, the extending metal strips are not visible from the front of the conversion cart and do not appear to pose a hazard to someone passing the cart while walking down the aisle toward the back of the store. As a result, someone (like Mrs. Foust) who has safely passed the conversion cart while proceeding to the back of the store may be less likely to observe the hazard while venturing again past the cart while walking toward the front of the store. In other words, an average person of ordinary intelligence, having discerned the location of the obstacle in the aisle while walking toward the back of the store, may be less likely to reassess the same obstacle when re-approaching it from the opposite direction.

For these reasons, the Court concludes that there is a genuine issue of material fact with respect to whether an ordinary user upon casual inspection would have discovered the metal strips extending from the conversion cart into the aisle way. A jury could reasonably infer that a casual inspection of the premises in which Mrs. Foust shopped would not have revealed these strips in light of their unexpected extension from only the backside of the cart's base, similar coloration to the cement floor, and location at floor level. As such, the Court concludes that

19

Defendant is not entitled to summary judgment with respect to Mrs. Foust's premises liability claim.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART** in that summary judgment is granted to Defendant only with respect to Count II of Plaintiffs' Complaint.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 29, 2016

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 29, 2016, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager
